**LiLaw Inc.**, a Law Corporation
J. James Li, Ph.D. (SBN 202855)
Tony Abdollahi (SBN 157235)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955
Email: lij@lilaw.us

Attorneys for Defendant Delson Group, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (OAKLAND DIVISION)

| | |
|---|---|
| TENCENT HOLDINGS LIMITED, a Cayman Islands limited company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DELSON GROUP, INC., a Delaware corporation,<br><br>　　　　Defendant | **Case No. 4:16-cv-06727-JSW**<br><br>**DELSON GROUP INC.'S MOTION TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: February 17, 2017<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 5 – 2nd Floor<br>JUDGE: Hon. Jeffrey S. White |



# NOTICE OF MOTION

Please take notice that Defendant Delson Group, Inc. ("Delson") hereby moves to stay this action filed by plaintiff Tencent Holding, Ltd. ("THL") pending the resolution of the previously filed Opposition proceedings, *Tencent Holdings Ltd. v. Delson Group, Inc.*, case no. 91207516, for the same trademarks before the Trademark Trial and Appeal Board ("Board" or "TTAB") of the United States Patent and Trademark Office. The hearing for the motion will he held on the date and time as shown in the caption of the Motion, before Honorable Jeffrey S. White in Courtroom 5 – 2nd Floor of the Oakland Division of United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California.

The motion is based on the memorandum of points and authorities, the request for judicial notice, the declaration of J. James Li, Ph.D. ("Li Decl."), the Declaration of Willie Lu ("Lu Decl.") and what further matters that the Court may consider at the time of hearing.

# STATEMENT OF RELIEF SOUGHT

Delson moves to stay this action pending the disposition of a four-year old case on the same issues that is near completion before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office.

# MEMORANDUM OF POINTS AND AUTHORITIES
## I.     INTRODUCTION

This action hinges upon the false allegation that Delson has no right to use the mark TENCENT despite its pending federal registration of the mark. The same issue, however, has been litigated for four years before the TTAB. The TTAB action was started by none other than THL. Dissatisfied with various rulings by the TTAB, THL now wants to change the forum on the eve of the resolution of the TTAB action.

The instant case should be stayed in light of the TTAB action. THL filed the TTAB action in 2012 to oppose Delson's registration of the TENCENT mark. Contrary to THL's allegations, Delson has the right of priority in use to register the mark. For that reason, the TTAB has denied THL's motion for summary judgment, and has ordered THL to produce relevant information that it has been trying to withhold from Delson. After extensive discovery efforts by both parties, the TTAB proceeding is now in its final stages, with discovery set to close on January 27, 2017 and trial to begin on March 28, 2017. So far, THL has not been able to show that it started using the mark

TENCENT in United States earlier than Delson's first use, and is thus destined to lose its TTAB challenge to Delson's registration of the mark. THL thus has been doing its best to delay the proceeding in TTAB, twice causing it to suspend. Now, when finally the TTAB proceeding is near its end, THL wants to abandon the forum of its choice altogether to start over again in a new forum before this Court. This new delay maneuver by THL came after the TTAB denied its latest motion to suspend and when Delson is threatening to file a motion to sanction THL for its failure to comply with the TTAB's order compelling THL to produce critical items of information. The filing of the instant case is thus nothing more than an improper attempt to further delay the resolution of the matter and is a blatant forum shopping. The Court should stay this action for judicial economy and for equity.

## II.  STATEMENT OF FACTS

### A.  Delson Is the Legitimate Owner of the TENCENT Mark; THL's Complaint Distorts the Facts

Although this is not a motion for arguing the merits of the case, it is important to set the record straight in light of THL's misstatements of facts in the Complaint.

As shown in the Declaration of Willie Lu in Support of Defendant's Motion to Suspend ("Lu Decl."), most of THL's allegations about him and Delson are based on distortions of the facts. Contrary to what THL alleges, Delson has legitimately used the mark TENCENT since 2001, far before THL's first use of the mark in the United States. Lu Decl. ¶ 5. Also contrary to what THL alleges, Delson has never registered any marks purely for the purpose of "squatting" the marks; instead, every mark that Delson has registered was either for marks it actually used or is planning to use. *Id.* ¶ 13(d).

THL deliberately misquoted a webpage of Delson. *Id.* ¶¶ 11-12. The webpage at issue, i.e., the "Trademark Resource Center by Delson Group," was for the now-defunct trademark consulting service of Delson. *Id.* ¶ 12. It talks about how Delson helps its customers obtain trademark protection. Lu Decl. Ex. A. It is not about obtaining trademarks for Delson, as THL alleges. *Id.* Thus, the phrase "trademarks' bank" was used in the context of discussing the trademarks that Delson helped its client to obtain, not Delson's own trademarks as THL contends. *Id.* ¶ 12(a). In reality, THL has only 20 some active trademarks or trademark applications, most of which are associated with its wireless



technology conference business. *Id.* ¶ 13(d). Out of the 20 some marks, only 4 (including the mark TENCENT) happen to coincide with supposedly famous Chinese companies. *Id*. Few had heard of these supposed famous companies in the U.S. at the time when THL first used these marks. None of them actually used the marks in the U.S. before Delson first used the marks. *Id.* Delson had very good reason to choose these marks which had nothing to do with the Chinese companies. *Id.* Thus, peeling away the misrepresentations, THL's allegations are short on substance and long on smearing.

### B.     THL Has Litigated the TENCENT mark in the TTAB for Four Years and the Matter Is Set for Trial Starting March 2017

After many years of actual use of the mark TENCENT, on February 9, 2012, Delson filed an application for federal trademark registration for TENCENT. On October 16, 2012, THL initiated the TTAB proceeding by filing a Notice of Opposition for the TENCENT mark in the action, *Tencent Holdings Ltd. v. Delson Group, Inc.*, case no. 91207516.[1] The essence of the Opposition proceeding is to ask the TTAB to decide the issue of whether Delson is entitled to register the mark TENCENT. *See* Li Decl. Ex. A.  Although the Opposition claims several issues, the gist of the dispute is which party first used the mark TENCENT in the United States.

Initially, Delson's owner, Willie Lu, represented Delson in the TTAB proceeding. On May 16, 2013, THL propounded its first set of interrogatories, to which Delson properly responded. Li Decl. ¶ 3. On August 21, 2013, on the eve of the close of discovery, THL filed a motion for summary judgment. The undersigned law firm appeared for Delson and filed an opposition to the motion for summary judgment. *Id.* ¶ 4. On December 16, 2013, the Board denied the motion and set a new case schedule.  *Id.* Ex. B.   The Board held:

> Based on our review of the arguments and evidence submitted by the parties … there is a genuine dispute as to material facts regarding whether opposer has used its TENCENT mark "in commerce" as defined under Trademark Act Section 45, 15 U.S.C. § 1127…and when opposer's asserted use of the TENCENT mark with its services commenced. Accordingly, opposer's motion for summary judgment on its claim of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), is <u>denied</u>.

*Id.* at 6 (emphasis in the original).

Ever since the failure of its motion for summary judgment, THL has been trying to delay the resolution of the TTAB cases. On January 22, 2014, at the beginning of the initial trial period of that

---

[1] Note that THL's complaint falsely suggests that Delson initiated the TTAB proceedings. (Comp., ¶ 30.)



proceeding, THL filed a motion to suspend it again based on another trademark application that it had filed. Li Decl. Ex. C. The TTAB granted the motion to suspend on February 15, 2014. The suspension lasted until March 31, 2014, with the consolidation of another opposition with the similar priority issues. Li Decl. Ex. D. Consequently, the parties were allowed to conduct some additional discovery and a new trial period was set to start on January 15, 2015. *Id.* at 3.

Thereafter, both parties propounded extensive discovery requests. Li Decl. ¶ 6. THL, however, refused to produce some highly relevant information. *Id*. On September 25, 2014, Delson filed a motion to compel further discovery. *Id*. Two weeks later, on October 15, 2014, THL filed its cross-motion to compel discovery. *Id*. The Board suspended the proceeding to decide the motions to compel, and issued an order several months later on March 3, 2015, granting most of the discovery items sought after by Delson. Li Decl. Ex. E.

On May 13, 2015, THL deposed Willie Lu, both in his personal capacity and also as a 30(b)(6) designee for Delson. Li Decl. ¶ 8.

On May 14, 2015, Delson deposed Linda Lee as THL's 30(b)(6) designee. *Id*.

On May 4, 2015, Delson filed its second motion to compel to compel David Wallerstein, which the Board granted on September 30, 2015. Instead of complying with the Board's order, THL filed a Motion for Reconsideration on October 28, 2015, which led to another suspension of the proceeding.

On May 26, 2016, the Board finally denied THL's motion for reconsideration and re-opened the proceeding. Ever since then, THL has been engaged in one delay maneuver after another. First, THL started to file a series of new applications attempting to register slightly different marks, which drew new oppositions from Delson. Li Decl. ¶ 9. Each new opposition was then consolidated into the ongoing proceeding. *Id*. THL also filed various motions to dismiss and motions to strike. *Id*. On the basis of these new filings, THL filed another motion to suspend on August 5, 2016. *Id*. Ex. F, which the Board denied and set the final case schedule for the consolidated case, with the trial period starting on March 13, 2017. *Id.* ¶ 10; Ex. G at 10.

Under the TTAB's order granting Delson's motion to compel, THL was supposed to produce various items of important information pertinent to the case. The motion to compel order issued on March 5, 2015. THL still has not complied with the order. After repeated meet and confer, on November 17, 2016, Delson sent its final letter warning THL that it would seek sanction against THL for refusing to comply with the Board's order. Li Decl. Ex. H. A few days later, on November 21, 2016, THL filed the instant case. On the same day, THL filed yet another motion to suspend before

the TTAB, which is currently pending. *Id.* Ex. I. Notably, THL concedes in the motion to suspend that this action involves the same issues presented before the TTAB. *Id.* ¶¶ 2-3.

### III.     ARGUMENT:

**The Court Should Stay the Instant Action for Judicial Economy and to Deter Forum Shopping**

A federal district court has the authority to stay proceedings for judicial economy in view of any parallel administrative proceeding, regardless of whether the parallel case controls the proceeding at issue. *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 865-64 (9th Cir. 1979)

> (A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.)

In relying on this general rule of discretion, in *Citicasters Co. v. Country Club Communs.*, 1997 U.S. Dist. LEXIS 17238, *4, 44 U.S.P.Q.2D (BNA) 1223 (C.D. Cal. July 21, 1997), the district court granted the defendant's motion to stay the case pending the resolution of a parallel proceeding before the TTAB on the same trademark. The court in Citicasters reasoned that the stay would work no "demonstrable harm" and that "the efficiencies generated by the TTAB first addressing the issues involved in this matter." *Id.* The court rendered the decision despite the fact that the TTAB results would not be binding, but would "prove valuable to [the court]."[2] *Id.* at 5.

The same rationale has been applied in staying district court cases in view of other administrative proceedings. *See New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F.Supp.3d 35, 36 (D.Mass. 2015) (staying a district court case pending the resolution of a parallel proceeding on the same trademarks before the International Trade Commission); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212 (D.Del. 1991) (staying a district court case in view of a parallel reexamination proceeding before the Patent and Trademark Office).

Applying the same principles to the instant case, it is an inescapable conclusion that the Court should stay the instant case in consideration of judicial economy and equity. After four years, the TTAB action has finished all discovery for both parties, and the discovery is set to close on January

---

[2] To be clear, neither the Citicasters decision nor the instant motion relies on the primary jurisdiction doctrine that requires the federal court to stay a case in light of an administrative proceeding under certain circumstances. The applicable law here is the inherent power of the court to stay cases in view of equity and judicial economy.



27, 2017 and the trial period to begin on March 28, 2017. Thus, the TTAB action will be resolved far faster than the instant case.

The resolution of TTAB action would greatly facilitate the resolution of all issues in this action. The key issue in the TTAB action is the issue of priority of the parties' claims to the mark "TENCENT." At this point, the available documentary evidence in the TTAB action provides strong support that Delson, not THL, was the first to use the mark in commerce in the United States, and thus is legally entitled to own and use the mark. This result, though not binding on this Court, can be used summarily by the Court to resolve all of the claims in the instant case:

- For the First Claim for Relief (declaratory relief), the finding by TTAB that Delson, not THL, has the priority to the mark TENCENT essentially resolves the claim.
- For the Second Claim for Relief (false representation and false designation of origin), the fact that Delson is the rightful owner of the mark TENCENT means its use of the mark was not false representation or false designation of origin.
- For the Third Claim for Relief (unfair competition), Delson's rightful ownership of the mark also means there was no unfair competition.

Even in the unlikely event that the TTAB action is resolved in THL's favor, it will also resolve all claims in the instant case and Delson will have to settle the case instead of continuing the litigation.

In contrast, if the instant case is allowed to proceed in parallel with the TTAB action or the TTAB action is stayed in light of this action, it is very likely that both this Court and the parties will be spending a lot of unnecessary hours litigating this case. It is highly likely that THL intended to re-do the entire discovery in this case, thus substantially increasing the litigation costs of both parties, by potentially millions dollars in additional fees and costs.

In contrast, there is no harm to either party if this action is stayed. If THL really thinks its position has merits, it should proceed to win at TTAB which will lead to quick resolution of the instant action. Thus, judicial economy calls for the stay of this action pending resolution of the TTAB action.

Deterring forum shopping is yet another important reason why the instant action should be stayed. THL chose TTAB four years ago to litigate this matter but is attempting to switch to this Court when it is about to lose the TTAB case. On this point, *United Sweetener* is again instructive. The court there noted that Plaintiff's decision to initiate the action before the PTO weighed against its reliance on a federal court as a subsequent forum:

> In deciding to impose the stay, we cannot ignore the fact that the plaintiffs themselves began the reexamination. They have benefitted from the substantive rulings obtained in that proceeding, so it is clear to us that they now seek only speed."

*Id*. Having submitted to the Board's jurisdiction on substantive matters of the case for four years, it is improper for THL to flaunt the Board's expertise at the eleventh hour by using the Northern District as an alternative forum to revisit the same issues. This is a stereotypical forum shopping which should be discouraged.

### IV.   CONCLUSION

THL's present action in the Northern District serves an ulterior purpose. THL was content to begin the trademark proceedings in the TTAB and litigate the TENCENT mark for over four years, repeatedly availing itself to the jurisdiction and authority of the Board. Now, with trial looming in March 2017, THL has apparently had a change of heart and wants to pursue relief in this alternative forum. For judicial economy and equity, Delson respectfully requests that the Court stay this action pending a decision by the TTAB on the same issues.

DATED:  December 12, 2016          **LiLaw Inc.**


By  /s/ J. James Li

   J. James Li, Ph.D.
   Tony Abdollahi
   Attorneys for Defendant Delson Group, Inc.



DELSON'S MOTION TO STAY PROCEEDINGS